**Robert P. HEHIR, Plaintiff,**

v.

**SHELL OIL COMPANY et al., Defendants.**

**Civ. A. No. 75–855–M.**

United States District Court, D. Massachusetts.

June 8, 1976.

Harold Brown, Boston, Mass., Warren D. Mulloy, David Berger, P. A., Philadelphia, Pa., for plaintiff.

Cornelius J. Moynihan, Jr., Peabody, Brown, Rowley & Storey, Boston, Mass., Robert C. Smith, Chicago, Ill., for American Oil Co.

Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, Mass., James E. Farrell, Jr., Houston, Tex., for Gulf Oil Corp.

Carl H. Amon, Jr., David S. Mortensen, Hale & Dorr, Boston, Mass., William R. Slye, Texaco, Inc., New York City, for Texaco, Inc.

John M. Harrington, Jr., R. K. Gad, III, Ropes & Gray, Boston, Mass., for Chevron Oil Co.

Charles F. Barrett, Nutter, McClennen & Fish, Boston, Mass., Robert L. Norris, Houston, Tex., for Exxon Corp.

Herman Snyder, Snyder, Tepper & Berlin, Boston, Mass., William Simon, William R. O'Brien, Howrey, Simon, Baker & Murchison, Washington, D.C., for Shell Oil Co.

Timothy H. Gailey, Hale & Dorr, Gerald Gillerman, Widett, Widett, Slater & Goldman, P. C., Boston, Mass., C. Lansing Hays, Jr., Hays, Landsman & Head, New York City, Otto C. Kitsinger, II, Robert A. Cohen, New York City, for Getty Oil Co.

R. Robert Popeo, John P. Birmingham, Jr., Mintz, Levin, Cohn, Glovsky & Popeo, Boston, Mass., James L. Burton, Mobil Oil Corp., New York City, for Mobil Oil Corp.

Lewis J. Ottaviani, Bartlesville, Okl., David L. Grove, Ralph W. Brenner, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Arnold Manthorne, Warner & Stackpole, Boston, Mass., for Phillips Petroleum Co.

Russell H. Smith, Darrel A. Kelsey, Tulsa, Okl., Paul J. Lambert, Bingham, Dana & Gould, Boston, Mass., for Cities Service Oil Co.

Robert M. Dubbs, St. David's, Pa., John G. Harkins, Jr., Barbara W. Mather, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Sun Oil Co.

Stephen A. Hopkins, Sherburne, Powers & Needham, Boston, Mass., Richard C. Rizzo, Philadelphia, Pa., for Atlantic Richfield Co.

James C. Heigham, Choate, Hall & Stewart, Boston, Mass., for Sun Oil Co. of Pa.

John S. Whipple, Peter G. Hermes, Peabody & Arnold, Boston, Mass., for Amerada Hess Corp., Hess Oil and Petroleum Div.

## MEMORANDUM AND ORDER

### FRANK J. MURRAY, District Judge.

This is an anti-trust action charging an illegal tie-in arrangement in violation of Section 1 of the Sherman Act.[1] The plaintiff operated a Shell service station under a lease from the defendant Shell Oil Company. As a condition of using Shell trademarks (the alleged tying product), the plaintiff was required under trademark protection provisions of the lease to sell only Shell branded gasoline (the tied product) in connection with the marks. The plaintiff alleges that he brings the action as a class action for a class consisting of all present and former Massachusetts service station operator-lessees of thirteen major oil companies, all of whom are required to purchase only the lessor's branded gasoline for sale under the lessor's trademarks. The plaintiff's motion for certification of a class under Fed.R.Civ.P. 23(b)(3) is presently before the court.

Rule 23 establishes the requirements for a class action[2] and the burden is on the plaintiff to show that these requirements are satisfied. *Baxter v. Minter*, 378 F.Supp. 1213, 1215 (D.Mass.1974); *see also* 3B J. Moore, Federal Practice ¶ 23.02–2 at 23–156 (2d ed. 1975). In general, the plaintiff must show that his action meets all the requisites set out in Rule 23(a) and the requisites of one of the three parts of Rule 23(b). In this case the plaintiff seeks to proceed under Rule 23(b)(3) and therefore must show that common questions predominate and that the class action is superior to other available methods of adjudicating the controversy. It appears that the plaintiff's motion for certification may founder on the

1. The complaint contains a pendent count under the Massachusetts unfair competition laws, Mass.Gen.Laws ch. 93A, alleging that the same acts which violate the Sherman Act are actionable under the Massachusetts statute.

2. Fed.R.Civ.P. 23 in pertinent part reads as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

commonality requirement and the court will address that issue at the outset.

I

The complaint alleges that the plaintiff is required to sell only gasoline purchased from his lessor-franchisor in connection with the use of the franchisor's trademark (Complaint, para. 4), and that defendants' licensing of their trademarks is dependent on the lessee's signing contracts of sale or other contractual provisions requiring exclusive purchase and sale of the defendants' gasoline in connection with the use of the licensed trademarks (Complaint, para. 10).[3] Thus it appears the plaintiff will rely on trademark protection provisions of "contracts of sale or other contractual provisions" to establish a tie-in between the franchisors' trademarks and their gasolines.

■ The plaintiff argues that since each member of the class is subject to such trademark protection provisions, the common question of whether such provisions violate the Sherman Act predominates. The answers to the plaintiff's class action interrogatories indicate that such provisions exist in at least thirty-five types of documents. This is a factor which militates against the class action device because even small variations in contractual language can have large antitrust consequences. *See Gaines v. Budget Rent-A-Car Corp. of America,* 1972 Trade Cas. ¶ 76,860 (N.D.Ill. 1972). Consideration of this factor has led courts to reject class actions which would have involved examination of over four hundred different contractual forms, *Bogo-*

*sian v. Gulf Oil Corp.,* 62 F.R.D. 124 (E.D. Penna.1973), forty different forms, *Plekowski v. Ralston Purina Co.,* 68 F.R.D. 443 (M.D.Ga.1975), and twelve different forms with materially different provisions, *Abercrombie v. Lum's Inc.,* 345 F.Supp. 387 (S.D. Fla.1972). This potential variation among the types of contractual or other forms employed by the defendants to express the alleged policy of tying their gasoline to the license to use their trademarks is sufficient to defeat the contention that common questions predominate with respect to the defendants other than Shell.[4]

Shell's answers to the plaintiff's class action interrogatories identify the source of the Shell policy as the Shell Policy Manual. Presumably, this would apply with equal force to all Shell operator-lessees in Massachusetts. *Compare Siegel v. Chicken Delight, Inc.,* 271 F.Supp. 722, 726 (N.D.Calif. 1967). However, the affidavit of J. J. Ubaldi, Shell Manager of Marketing, states that Shell enters into sixteen to thirty contracts with its operator-lessees in Massachusetts, the number varying from dealer to dealer, and that riders or other modifications are often added as a result of negotiations between Shell and the dealer. These facts introduce elements of variety among the class of Shell operator-lessees that militate against certifying this lawsuit as a class action with the class restricted to present and former Shell operator-lessees.

II

■ A further reason for denying class action status here is that proof of a tie-in

---

**3.** This recitation of the claims set forth in the plaintiff's complaint is appropriate not because the plaintiff must show any likelihood of success on the merits in order to demonstrate that a class action is proper, but because an understanding of the claims and the elements of proof involved is essential in determining whether common questions of law or fact predominate. *See Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65, 79 (E.D.Penna. 1975), *rev'd on other grounds,* 531 F.2d 1211 (3rd Cir. 1976).

**4.** The plaintiff's request for production of documents includes all documents listed in response to an interrogatory asking the defendants to

identify any documents embodying a policy that only the defendants' gasoline may be sold through pumps marked with the defendants' trademarks. Two defendants have appended the documents so identified to their responses to the plaintiff's requests for production, and these documents are in the file. Other defendants stated that such documents are available for copying; others, that there are no such documents; and still others objected to the interrogatory. In these circumstances, where the plaintiff has the burden of proof of showing that a class action is proper, it is the plaintiff's responsibility to copy and submit to the court those documents which are available.

requires a showing of coercion by each member of the purported class. The elements of an illegal tie-in are (1) separate tying and tied products, (2) "economic power" or "market power" or "leverage" in the market for the tying product, and (3) an effect on a "not insubstantial" amount of commerce. *See generally International Salt Co. v. United States,* 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); *Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). The second element—economic power—has been described more fully as " . . . sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product". *Northern Pacific, supra,* 356 U.S. at 6, 78 S.Ct. at 518. In other words, there is a tie-in where a seller has enough economic power to induce buyers who otherwise would not purchase the tied product to purchase both tying and tied products rather than have neither. *Cf. Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). This definition implies coercion of the buyer by the seller. Where the buyer would voluntarily purchase the tied product from the seller in any case, there is no coercion and no illegal tie-in because the seller has not used his dominance in the market for the tying product to restrain competition in the market for the tied product. The determination of whether a particular purchase involves coercion or voluntary choice necessarily focuses on the individual purchaser. This circumstance introduces a myriad of individual questions and destroys the predominance required for certification of a class under Rule 23(b)(3).

The issue of whether the element of market power requires an individual showing of coercion by each purchaser, thus destroying the utility of the class action device, received extensive discussion by both the district court and the court of appeals in *Un-gar v. Dunkin' Donuts of America, Inc., supra,* fn. 3. As noted above, the court agrees with the conclusion of the court of appeals that the coercion element undermines the utility of the class action in a case such as this.

Accordingly, the plaintiff's motion for an order determining that this suit is maintainable as a class action is denied.