RENTAL CAR OF NEW HAMPSHIRE, INC., Chalet Management Company of America, Inc., Charles Le Baron, Le Baron Car Rent, Inc., Ivan Arnold Perkins, Felton Pervier and Rita Pervier, his wife, William C. Kichton and William J. Price, Individually and as Co-Partners doing business under the firm name and style of Econo-Car of Lynn, Poster Car Rental, Inc., Stephen B. Poster, and Dorothy M. Poster, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Econo-Car International, Inc., Americar, Inc., Distributor Auto Rentals, Inc., Franchise Realty Corp., Econo-Car Overseas, Inc., Three Ninety Nine Auto Rental of Boston, Inc., Defendants.

Civ. A. No. 71–2393–M.

United States District Court,
D. Massachusetts.

June 20, 1980.

Harold Brown, Brown, Prifti, Leighton & Cohen, Boston, Mass., Leon J. Greenspan, Greenspan & Jaffe, White Plains, N.Y., David Berger, Warren D. Mulloy, Herbert B. Newberg, Howard L. Schambelan, David Berger, P. A., Philadelphia, Pa., for plaintiffs.

John R. Hally, Michael Liston, Nutter, McClennan & Fish, Boston, Mass., for defendants Westinghouse Elec. Corp. and Econo-Car International, Inc.

John M. Kahn, Gael Mahony, Hill & Barlow, Boston, Mass., for defendants Americar, Inc., Distributor Auto Rentals, Inc., Franchise Realty Corp., Econo-Car Overseas, Inc., and Three Ninety Nine Auto Rental of Boston, Inc.

## MEMORANDUM AND ORDER

FRANK J. MURRAY, Senior District Judge.

In this antitrust action brought by certain franchisees and former franchisees of the Econo-Car auto rental chain, to vindicate alleged violations of Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 14), the plaintiffs have moved for class action certification under Fed.R.Civ.P. 23(a) and (b). The named plaintiffs include current and former franchisees of the Econo-Car auto rental chain. The principal defendants are the national franchisor, Econo-Car International, Inc. and its parent corporation, Westinghouse Electric Corporation. Plaintiffs seek class action certification also against four other defendants alleged to have participated in the antitrust violations. The purported class of which plaintiffs seek certification is described as all Econo-Car dealers throughout the United States who are alleged to number in excess of two hundred. Defendants suggest that, as of March 3, 1972, there were 178 current franchisees, 70 past franchisees who voluntarily terminated, and 52 other past franchisees. The court proceeds on the assumption that the class intended in the motion for certification includes both present and former franchisees.

The alleged violations of Section 1 of the Sherman Act, in restraint of trade, are:

(1) that defendants forced the franchisees, as a condition of obtaining and retaining the franchise, to purchase all their auto insurance requirements from the franchisor;

(2) that defendants forced the franchisees, as a condition of obtaining the franchise, to purchase their original fleets of autos from designated sources;

(3) that defendants conspired to fix prices for fleet sales of autos to franchisees.

The alleged violations of Section 3 of the Clayton Act are that defendants conspired to fix prices for fleet sales of autos to franchisees. The complaint also alleges a state law claim, under the pendent jurisdiction of the court, that defendants breached a fiduciary duty owed to franchisees by accepting kickbacks from the fleet auto manufacturers in connection with fleet purchases by franchisees. Thus it appears the plaintiffs will seek to prove that certain provisions of franchise license agreements constituted insurance and auto purchase tie-ins that violated the antitrust laws, that defendants conspired to fix the prices franchisees would pay for autos destined for franchisees' rental fleets, and that the franchisor breached fiduciary obligations that arose from the franchise agreements and from extra-contractual representations and solicitations.

The burden is on the plaintiffs to show that the prerequisites of Rule 23(a) (numerosity, common questions of law or fact, typicality of claims, and fair and adequate representation of class by plaintiffs) are satisfied, and in addition that the claims fall within one of the categories of Rule 23(b). Hehir v. Shell Oil Co., 72 F.R.D. 18, 20 (D.Mass.1976). The principal challenges raised by defendants against the motion for certification are that individual questions and not common questions predominate, and that plaintiffs and their attorneys cannot adequately represent the interests of the class.

### a. Numerosity

Whether the present and past franchisees are regarded as properly one class or two sub-classes plaintiffs have asserted with the degree of particularity required by Rule 23(a) that a certain number of pro-

ve class members exist. Courts have
found classes of as few as thirteen, *Dale
Electronics, Inc. v. R.C.L. Electronics, Inc.*,
53 F.R.D. 531 (D.N.H.1971), and twenty-
five, *Philadelphia Electric Co. v. Anaconda
American Brass Co.*, 43 F.R.D. 452 (E.D.Pa.
1968), to be proper, where attending cir-
cumstances tend toward superiority of the
class action. Though the numerosity re-
quirement of Rule 23(a) does not depend
upon mere numbers, plaintiffs have met
that requirement of the Rule here because
of the commonality of certain questions and
the superiority of the class action in that
context.

### b. Typicality of Claims

The typicality requirement of Rule 23(a)
has been equated with other elements of
Rule 23, some courts equating it with the
Rule 23(a)(2) requirement of common ques-
tions, *see, e. g., Rakes v. Coleman*, 318
F.Supp. 181, 190 (E.D.Va.1970), others see-
ing it as the equivalent of the Rule 23(a)(3)
requirement that the named plaintiffs fair-
ly and adequately represent the absentee
class members. *See, e. g., Robertson v.
National Basketball Ass'n*, 389 F.Supp. 867,
898 (S.D.N.Y.1975), *aff'd*, 556 F.2d 682,
684–86 (2d Cir.1977); 3B Moore's Federal
Practice ¶ 23.06–2, at 23–185 to 23–190 (2d
ed. 1980). *See also Sommers v. Abraham
Lincoln Federal Savings and Loan Associa-
tion*, 66 F.R.D. 581, 586–87 (E.D.Pa.1975);
*Ungar v. Dunkin' Donuts of America, Inc.*,
68 F.R.D. 65, 136 (E.D.Pa.1975), *rev'd on
other grounds*, 531 F.2d 1211 (3rd Cir.), *cert.
denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d
84 (1976).

■ Separately construed, typicality has
been said to require that "the claims of the
representatives of the class be co-extensive
with the claims of the members of the
class", that is, "the representative parties
need prove . . . precisely what the
absentees must prove to recover". *Minne-
sota v. United States Steel Corp.*, 44 F.R.D.
559, 566, 567 (D.Minn.1968). In *Mersay v.
First Republic Corporation of America*, 43
F.R.D. 465 (S.D.N.Y.1968), the court, noting
that a typical representative must not have

interests directly in conflict with members
of the class, allowed a plaintiff, barred from
recovery by his status as an "insider", to
represent a class of defrauded stockholders
in a securities case. Here, both existing
and former franchisees must prove the
same facts to recover for antitrust viola-
tions, and both have an interest in prevent-
ing such antitrust abuses. Thus the named
plaintiffs are typical, although some of
them no longer have franchises.

### c. Common Questions of Law or Fact

■ Rule 23(a)(2) requires a showing by
plaintiffs of "questions of law or fact com-
mon to the class", and Rule 23(b)(3) pro-
vides for class certification where such
questions "predominate over any questions
affecting only individual members". A
principal challenge of defendants to certifi-
cation is aimed at this requirement, and
plaintiffs' claims must be examined sepa-
rately.

### (1) Sherman Act: Insurance Tie-in

■ Section 1 of the Sherman Act
makes unlawful combinations or contracts
in restraint of trade. 15 U.S.C. § 1. A
tying arrangement may be considered to be
in restraint of trade and has been defined
as "an agreement by one party to sell one
product but only on the condition that the
buyer also purchases a different . . . prod-
uct, or at least agrees that he will not
purchase that product from any other sup-
plier". *Northern Pacific Railway Co. v.
United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514,
518, 2 L.Ed.2d 545 (1958). The question
whether a tying arrangement, in any par-
ticular instance, will be deemed so unrea-
sonable as to constitute a *per se* violation of
the antitrust laws depends upon the market
power the seller possesses over the tying
product and the effect of the tie-in on inter-
state commerce in the tied product. *Id.* at
5–6, 78 S.Ct. 518. It is only when the seller
has sufficient economic power over the ty-
ing product to restrain a "not insubstantial
amount" of interstate commerce in the
product sought to be tied that the arrange-
ment will be held to be *per se* illegal. *Id.;*

*International Salt Co. v. United States*, 332 U.S. 392, 396, 68 S.Ct. 12, 15, 92 L.Ed. 20 (1947). "[T]he vice of tying arrangements lies in the use of economic power in one market to restrict competition on the merits in another . . . ." *Northern Pacific Railway Co. v. United States, supra* at 11, 78 S.Ct. at 521. Thus the three elements of a *per se* tying violation of Section 1 of the Sherman Act are (1) the conditional sale of two distinct products, (2) economic power over the tying product, and (3) the effect upon a "not insubstantial" amount of interstate commerce. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3rd Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

■ Plaintiffs' claim that the franchisor imposed on all franchisees a condition of the use of the franchisor's trademark by requiring franchisees to execute the uniform standard franchise agreement (which provided for the purchase of the franchisee's insurance requirements from franchisor), makes a showing of a tie-in on the face of the agreement. A trademark or franchise license may be a "tying product". *Warriner Hermetics, Inc. v. Copeland Refrigeration Corp.*, 463 F.2d 1002, 1015–16 (5th Cir.), *cert. denied*, 409 U.S. 1086, 93 S.Ct. 688, 34 L.Ed.2d 673 (1972); *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 49 (9th Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972). A tying arrangement, as evidenced by contractual terms uniformly imposed on all class members, satisfies the commonality requirement of Rule 23.

■ The question whether coercion of individual franchisees is an element of the alleged violation of Section 1 of the Sherman Act, where express contractual provisions show a tie-in, was reserved in *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211, 1226 n.17 (3rd Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). However, in *Bogosian v. Gulf Oil Corp., supra* at 450, the Third Circuit held that proof of coercion on an individual basis was not required if the tying claim were grounded in the express provisions of a uniform contract. The court is disposed to follow this holding. *Compare Hehir v. Shell Oil Co., supra.*

The court reserves to later in this memorandum a discussion of proof of injury to the franchisees on a class-wide basis, and the argument of defendants concerning their counterclaims. It is enough to say here that the contract requirement of purchase of insurance involves common questions of fact.

## (2) *Sherman Act: Fleet Purchase Tie-in*

Plaintiffs argue that the fleet purchase tie-in is embodied in the franchise contracts and therefore meets the requirements of Rule 23 for class action treatment. However, the showing made by plaintiffs does not support the contention that the fleet purchase tie was imposed by contract. The franchise agreement states in pertinent part that "ECONO–CAR agrees to make available to the ECONO–DEALER at all times a quantity of automobiles for use in the daily rent-a-car business on the most favorable terms available. These vehicles may be available to the ECONO–DEALER on the basis of sale, lease or whatever method or methods that ECONO–CAR shall negotiate in behalf of all of its ECONO–DEALERS." Franchise Agreement, paragraph 5(C).

This provision imposes an obligation on the franchisor, and it is not evident from the contract that franchisees are required to purchase their initial automobile fleets from defendants' designees. Even if it be true, as plaintiffs contend, that pursuant to the above provision of the contract, the franchisor has a resolutely enforced company policy of conditioning retention of the right to use the franchisor's trademark upon such purchase, the tie-in does not appear in the contract in express terms. Evidence extrinsic to the contract will be required to prove coercion of the individual franchisees on a case-by-case basis. Where the issue of the alleged tie-in of initial fleet purchases must rest on proof of individual cases, the commonality requirements of Rule 23 are not satisfied, and the claim does not justify class action treatment.

**(3) *Clayton Act: Fleet Purchase Tie-in***

Plaintiffs allege that the fleet purchase tie-in violates Section 3 of the Clayton Act, 15 U.S.C. § 14, which makes unlawful the sale of "goods, wares, merchandise, machinery, supplies, or other commodities" conditioned upon the buyer's not dealing in the goods of a competitor where such practice may substantially lessen competition. Section 3 outlaws two anti-competitive devices: tying arrangements for sales, *see, e. g., United Shoe Machinery Corp. v. United States*, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708 (1922); exclusive dealing contracts, *Standard Oil Co. v. United States*, 337 U.S. 293, *amended & rehearing denied*, 338 U.S. 808, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949). While there is some overlap in the application of Section 3 of the Clayton Act and Section 1 of the Sherman Act, the Supreme Court in *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953), explained the different tests of liability regarding tying arrangements. The Court said:

> [f]rom the "tying" cases a perceptible pattern of illegality emerges: When the seller enjoys a monopolistic position in the market for the "tying" product, *or* if a substantial volume of commerce in the "tied" product is restrained, a tying arrangement violates the narrower standards expressed in § 3 of the Clayton Act because from either factor the requisite potential lessening of competition is inferred. And because for even a lawful monopolist it is "unreasonable, *per se*, to foreclose competitors from any substantial market," a tying arrangement is banned by § 1 of the Sherman Act whenever *both* conditions are met.

*Id.* at 608–09, 73 S.Ct. at 880. Where a practice does not transgress Section 3 of the Clayton Act, no violation of the Sherman Act can be shown. *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 335, 81 S.Ct. 623, 632, 5 L.Ed.2d 580 (1961). While plaintiffs need prove less to show that a fleet sales tie-in violates the Clayton Act, the question whether the claim under the Clayton Act presents common questions justifying class action treatment under Rule 23

is essentially the same as whether the claim under the Sherman Act presents such questions. The court concludes the claim under the Clayton Act does not justify class action treatment.

**(4) *Sherman Act: Fleet Purchase Price Fixing***

As noted above, Section 1 of the Sherman Act makes unlawful combinations in restraint of trade. When the proof shows that a defendant has acted in concert with another "for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate . . . commerce", the combination is illegal *per se*. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940). In the case at bar, plaintiffs have alleged that defendant franchisor, who arranged fleet purchases on behalf of franchisees, conspired with auto manufacturers to fix the prices at which franchisees would buy their new rental fleets.

This allegation raises issues of the existence of alleged conspiracies and what the prices would have been in the absence thereof. *Philadelphia Electric Co. v. Anaconda American Brass Co., supra* at 458. The issue whether or not defendants actually conspired as alleged is basic to liability, and normally would predominate over any individual issues. *See Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484, 488–89 (N.D.Ill.1969); *Minnesota v. United States Steel Corp., supra*, 44 F.R.D. at 571; *City of Philadelphia v. Morton Salt Co.*, 248 F.Supp. 506, 514 (E.D.Pa.1965). It thus appears that plaintiffs, as to this aspect of their liability case, have satisfied the common question requirements of Rule 23. The court reserves to later in this memorandum consideration of the other essential element of the liability case—proof of injury to the franchisees on a class-wide basis.

**(5) *Sherman Act: Conspiracy to Restrain Trade by Fleet Purchase Tie-in Arrangements***

The court found above in section c.(2) that the claim of alleged tie-in of initial

fleet purchases in violation of the Sherman Act does not satisfy the requirements of Rule 23 and therefore does not justify class action treatment. It remains to be considered whether the allegation that defendants conspired to tie the use of the trademark to the franchisee's initial fleet purchases requires a contrary result as to class action treatment.

■ Ordinarily, allegations of conspiracy are held appropriate for class action treatment because common questions arising out of the alleged conspiracy frequently predominate over individual questions. *See, e. g., Illinois v. Harper & Row Publishers, Inc., supra; Philadelphia Electric Co. v. Anaconda American Brass Co., supra* at 458. Notwithstanding the generality of this view, however, courts have held that an allegation of a conspiracy to restrain trade by a tying arrangement does not convert a claim otherwise inappropriate for class treatment into one that may proceed as a class action. *Thompson v. T. F. I. Companies, Inc.,* 64 F.R.D. 140, 147–48 (N.D.Ill. 1974); *Abercrombie v. Lum's Inc.,* 345 F.Supp. 387, 391. (S.D.Fla.1972). There is a split of authority on this issue. *See Bogosian v. Gulf Oil Corp., supra,* 561 F.2d at 453 n.13 (dictum); *Jennings Oil Co. v. Mobil Oil Corp.,* 80 F.R.D. 124, 129 n.8 (S.D.N.Y.1978). For reasons which follow the court is of the opinion that the better view is expressed by *Abercrombie* and *T. F. I.*

■ The essence of a tying claim is an illegal arrangement, express or implied, between a buyer and seller. *Abercrombie, supra* at 391. Where, as in the case at bar, conspirators are alleged to have accomplished the tying arrangement, plaintiffs will be required to prove that the arrangement is an illegal tie. Proof of conspiracy in a tying arrangement case would not relieve plaintiff of the burden of proving the illegality of the tie. If the allegation of conspiracy could revive a claim that had failed, as in the case before the court here, to satisfy the commonality requirement of Rule 23, then "merely stating the 'common issue' in terms of the statutory language would make every antitrust case a class

action". *Abercrombie, supra* at 391 n.9. The drafters of the Rules of Civil Procedure never intended that such be the case. *See Proposed Amendments to Rules of Civil Procedure, Advisory Committee's Note,* 39 F.R.D. 73, 103 (1966). It is not enough merely to allege such a conspiracy; plaintiff must go further and satisfy the court that common questions of proof of the tying arrangement will predominate. Plaintiffs have not shown this. Thus the allegation of conspiracy to tie does not change the result reached in section c.(2) above, and the court finds that this claim does not justify class action treatment.

### (6) *The Pendent State Claim: Breach of Fiduciary Duty*

A fiduciary duty on the part of the franchisor owing to franchisees is alleged to have arisen from the franchise license agreement provision promising favorable terms for supply of autos, guidance and business advice, and aid in advertising and promotion. In addition, it is alleged that fiduciary duties arose from extra-contractual representations and solicitations by the franchisor. Breach of the fiduciary duties is alleged in that defendants accepted kickbacks from auto manufacturers in connection with fleet purchases by franchisees, kept advertising allowances, and failed to make fleet autos available to franchisees on the most favorable terms.

■ Federal jurisdiction over state law claims exists because of pendent jurisdiction to plaintiffs' assertion of Sherman Act and Clayton Act violations, and of the presence of a common nucleus of operative fact with the antitrust claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The doctrine of pendent jurisdiction is one of discretion as long as the federal claims present substantial federal questions. *Rosado v. Wyman,* 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970). In considering a state law claim under pendent jurisdiction, the court must apply the substantive law of the state, including its choice of law rules. *Cf. Klaxon Co. v. Sten-*

*tor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The choice of law rules of Massachusetts apply here in determining which state's law governs the claim that a fiduciary duty was owed and breached; Rule 23 requirements of commonality must then be analyzed in light of such determination.

 The franchise contract must be deemed to have been made in Florida because, on its face, it was not effective until accepted by defendant's authorized officer in Florida. *See Shoe & Leather National Bank v. Wood*, 142 Mass. 563, 8 N.E. 753 (1886). Applying Florida conflicts of law rules, the interpretation of the contract must be made in accordance with Florida law. *Fincher Motors, Inc. v. Northwestern Bank and Trust Co.*, Fla.App., 166 So.2d 717, 719 (1964); *Castorri v. Milbrand*, Fla. App., 118 So.2d 563, 565–66 (1960). Under this rule, Florida law would govern all the franchise contracts, and common questions of law would predominate. *See Hawkins v. Holiday Inns, Inc.*, 19 F.R.Serv.2d 1322, 1325 (W.D.Tenn.1975).

 If the fiduciary claim sounds in tort, because of the extracontractual representations and solicitations by the franchisor, Massachusetts would follow the choice of law rule of *lex loci delicti. Brogie v. Vogel*, 348 Mass. 619, 621, 205 N.E.2d 234 (1965). *Compare Pevoski v. Pevoski*, 371 Mass. 358, 359–61, 358 N.E.2d 416 (1976); *Engine Specialties, Inc. v. Bombardier, Ltd.*, 605 F.2d 1, 19 (1st Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980). Thus the law of every state in which a fiduciary duty arose and was tortiously breached would be involved in resolving the claims of individual members of the class of franchisees, and common questions of law would not predominate.

On this record, the breach of the fiduciary duties cannot be considered confined to the franchise contract with respect to members of the proposed class, and thus the Rule 23 requirement of the predominance of common questions is not satisfied with respect to the pendent claims. The claims do not justify class action treatment.

### (7) *Defendants' Counterclaims*

Defendants contend that they have counterclaimed against the named plaintiffs for money allegedly owing to defendants under the franchise agreements, and that the individual issues raised by the counterclaims threaten to overwhelm the common issues of the antitrust claims. However, defendants have not shown that potential recovery on the counterclaims would far exceed the possible recovery from the antitrust claims in some cases. Thus defendants have not shown that this case falls within the holding of *Cotchett v. Avis Rent A Car System, Inc.*, 56 F.R.D. 549, 553 (S.D.N.Y.1972).

 In the case of *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 78 F.R.D. 622 (W.D.Wash.1978), the court there held counterclaims raising essentially different issues were no more than "actions to collect monies due on debts". *Id.* at 626. As in the case of *Herrmann v. Atlantic Richfield Co.*, 72 F.R.D. 182 (W.D. Pa.1976), the counterclaims in the case before the court here appear to be no more than debt collection actions which may be prosecuted separately. *Id.* at 185. The presence of counterclaims of this character does not preclude class certification for want of commonality.

### (8) *Fact of Injury Requirement*

 Essential to antitrust liability is the requirement of proof that a plaintiff has suffered some injury and the injury is causally related to a defendant's violation of the antitrust laws. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488–89, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *Bogosian v. Gulf Oil Corp., supra*, 561 F.2d at 454. Where the common issue of fact of injury can be established class wide, the fact that the quantum of damages would need be determined on an individual basis will not preclude class action certification.

The question whether fact of injury can be established on a class-wide basis "depends upon the circumstances of each case". *Bogosian v. Gulf Oil Corp., supra*, at 454. In the case at bar, plaintiffs will seek to

prove that franchisees were precluded by the franchise agreement from purchasing their automobile insurance requirements from anyone other than the franchisor. If the effect of such preclusion were to increase the costs of insurance requirements to a class of plaintiffs beyond the costs which would obtain in a free market, proof of the fact of injury could be demonstrated by evidence that the free market prices were lower than the price payable under the franchise agreement, and that plaintiffs did in fact purchase insurance from the franchisor at the higher price. Further, if the costs of insurance under the franchise agreement varied nationwide, in that the contract costs in some market areas were less than in others, but were higher in all market areas than would obtain in such areas under competitive conditions, fact of injury could be established on a class-wide basis. *See Bogosian v. Gulf Oil Corp., supra* at 454–55; *Hedges Enterprises, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461, 474–75 (E.D.Pa.1979); *Martino v. McDonald's System, Inc.*, 81 F.R.D. 81, 92–93 (N.D.Ill.1979). *Compare Windham v. American Brands, Inc.*, 565 F.2d 59, 65–66 (4th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978).

Plaintiffs will seek to prove also that the effect of the alleged conspiracies with auto manufacturers to fix prices at which franchisees would buy their new rental fleets caused injury to their respective businesses. In *Bogosian, supra,* it was said "when an antitrust violation impacts upon a class of persons who do have standing, there is no reason in doctrine why proof of the impact cannot be made on a common basis so long as the common proof adequately demonstrates some damage to each individual". *Id.* at 454. In the case before the court, plaintiffs will seek to prove that the alleged conspirators were engaged in supplying franchisees with rental cars, and that the franchisees were injured as a result of having acquired the cars at conspiratorially established prices. If such prices were shown to be above those prevailing in the competitive market, and if plaintiffs demonstrated that members of the class acquired the rental cars at such artificially elevated price levels, the proof would establish injury on a class-wide basis. At this stage in the proceedings it is not necessary for plaintiffs to prove the quantum of damages that each franchisee has sustained.

Thus with respect to both the insurance tie-in and the fleet purchase price-fixing allegations, plaintiffs have made a sufficient showing at this stage that common questions of fact predominate, thereby justifying class certification. If at some later point it should appear that fact of injury on a class-wide basis cannot be proved, the court may then consider the alternative of dividing the class into sub-classes or consider class decertification. Fed.R.Civ.P. 23(c).

d. *Adequacy of Representation of the Class*

The adequate representation requirement of Rule 23(a) is primarily addressed to two elements:

(a) that the interests of the representative party must coincide with those of the class; and (b) that the representative party and his attorney can be expected to prosecute the action vigorously. . . .
Both questions are left to the discretion of the court based upon the facts and circumstances of each case. . . .

*Mersay v. First Republic Corp. of America, supra,* 43 F.R.D. at 469. A principal challenge of defendants is aimed at this requirement on the grounds that plaintiffs are primarily terminated franchisees seeking to represent a class consisting mainly of current franchisees, and that their counsel have conflicts of interest. An additional ground stated by defendants, that plaintiffs are each subject to substantial counterclaims by Econo-Car, has been considered by the court and found to be no obstacle to class certification. Thus the court turns to the defendants' first stated grounds.

Defendants argue that the complaint and goals of the named plaintiffs are antagonistic to those of the current and former franchisees which plaintiffs seek to represent.

Defendants rely on *DiCostanzo v. Hertz Corp.*, 63 F.R.D. 150 (D.Mass.1974), in support of their contention that former franchisees are not proper representatives of a class of current franchisees because of the potential conflicts of interest. *DiCostanzo* involved a sole named plaintiff, a former Chrysler dealer, who was employed by a Cadillac-Olds dealership at the time he sued in behalf of former and current Chrysler franchisees. The possibility of conflict of interest between the plaintiff there and the members of the class he sought to represent arising out of direct commercial competition between the Cadillac-Olds dealer by whom he was employed and current Chrysler franchisees in the proposed class, satisfied the court that plaintiff could not provide adequate representation. *DiCostanzo* is distinguishable from the case here.

The issue remains whether or not the presence among named plaintiffs of current as well as former franchisees requires the denial of class certification on the ground of inadequate representation. The practical effect of class certification is to designate the named plaintiffs as attorneys for class members absent from the action. *See, e. g., Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978), *aff'd on other grounds*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). When the interests of the named plaintiffs are significantly antagonistic to class members, class certification is not favored. *Matarazzo v. Friendly Ice Cream Corp.*, 62 F.R.D. 65, 69 (E.D.N.Y.1974).

In the case at bar, current as well as former franchisees, among the named plaintiffs are united in their claims against defendants for antitrust violations, and their respective interests are not antagonistic to one another on the liability issues. Nor would their interests be antagonistic to those of absent class members on the same issues of liability. However, as between current franchisees and former franchisees, there are potential conflicts of interest among the named plaintiffs concerning the nature of the relief sought against defendants, or the division of a monetary award,

and those potential conflicts would exist between the named plaintiffs and the absent class members comprised of present and former franchisees. *See, e. g., Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440, 446 n.5 (E.D.Pa.1975); *Robbins Flooring, Inc. v. Federal Floors, Inc.*, 445 F.Supp. 4, 12 (E.D.Pa.1977). Several courts have denied class certification to former franchisees who purport to represent current franchisees. *See Robbins Flooring, Inc. v. Federal Floors, Inc., supra; Matarazzo v. Friendly Ice Cream Corp., supra; Seligson v. The Plum Tree, Inc.*, 61 F.R.D. 343, 345–46 (E.D.Pa.1973); *Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A.*, 55 F.R.D. 26, 29 (S.D.N.Y.1972). In *Aamco, supra*, the court denied class certification where former franchisees sought to represent a class of current and former franchisees, but in dicta suggested the appropriateness of class certification if the named plaintiffs included former and present franchisees. *Id.* at 446 n.5.

In *Jacobi v. Bache & Co.*, 16 F.R.Serv.2d 71 (S.D.N.Y.1972), the court pointed out that:

Differences in view among the members of the class as to the appropriate remedy once a violation is established, are secondary to the basic liability issue of establishing the existence of the conspiracy. Therefore, divergent views on the appropriate remedy, or even whether there should be a remedy, do not destroy the representative status of a particular plaintiff insofar as the central liability issue of conspiracy is concerned. If, during the course of the litigation, such divergent views on the appropriate remedy create a real, as distinguished from a theoretical, conflict in interest, then the court may divide the class into subclasses. However, such subdivision of the class should await the surfacing of the problem and need not be done while the case is still in its liability stage.

*Id.* at 74.

In *Chmieleski v. City Products Corp.*, 71 F.R.D. 118 (W.D.Mo.1976), in which plaintiffs sought to present class and sub-class

claims for both damages and injunctive relief, the court said:

the solution to a potential problem concerning the coextensiveness of interest of current and former franchisees in injunctive claims is not a denial of the class suit on that basis but rather is a consideration of the myriad of possibilities presented by Rule 23(c)(4) and (d) for avoidance of any conflict which may arise.

*Id.* at 154.

■ Thus appears the better rule that a conflict of interest must jeopardize the interests of the class members to justify class denial, and that the conflict should not preclude class certification when the interests of the absentees can be protected by the creation of sub-classes, by court supervision, or, in certain instances, even by defendant-trustees. *See, e. g., Dierks v. Thompson,* 414 F.2d 453, 456–57 (1st Cir. 1969). Moreover, should conflicts between the named plaintiffs and absent members of the class become real, such absentees will at some point be afforded the opportunity to exercise their right to "opt out". Rule 23(c)(2).

Here defendants concede the widely acknowledged expertise of counsel for plaintiffs. Although defendants argue that adequate representation is unlikely because plaintiffs' counsel, in representing auto dealers in another case, has advanced a theory of liability completely at variance with the theory of the case at bar, that argument is now inapposite because the other case is no longer pending. *Ferri v. Hertz Corp.,* Civ. No. 75–731 (D.Mass., stipulation of dismissal with prejudice filed Feb. 5, 1979). At this stage of the litigation plaintiffs have satisfied the court that the adequacy of representation requirement presents no obstacle to class certification.

■ The court has found with respect to both the alleged violations of the Sherman Act concerning the insurance tie-in and the fleet purchase price-fixing conspiracy that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. With respect to the other antitrust counts and the pendent claim plaintiffs have failed to satisfy the court that class certification is appropriate.

e. *Superiority of Class Action Over Other Possible Alternatives*

Thus there remains only the determination whether the class action device is a superior method of resolving the controversy over the alleged insurance tie-in and the alleged price-fixing conspiracy. Defendants have not brought to the attention of the court the pendency of any other litigation dealing with the claims encompassed by plaintiffs' complaint; neither have they shown that absentee members of the class would have any particular reason to manage or control such litigation. Accordingly, the court addresses other factors in assessing the relative superiority of a class action in these circumstances.

■ First, the class proposed by plaintiffs is not so large as to be unmanageable. Second, there is a great degree of judicial efficiency to be achieved by using the class action vehicle to determine whether or not liability should attach to the acts of defendants that are alleged to have occurred nationwide. Third, the antitrust statutes were designed to foster competition rather than merely to provide redress for discrete injuries suffered by competitors, and the class action device, by mobilizing scattered and passive franchisees, serves to effectuate these statutory objectives better than individual or joint actions. For the foregoing reasons, the court finds that class action treatment of the insurance tie-in and fleet purchase price-fixing conspiracy issues is "superior to other available methods for the fair and efficient adjudication of the controversy". Fed.R.Civ.P. 23(b)(3).

### ORDER

An appropriate order may enter certifying that this action may be maintained

as a class action under Fed.R.Civ.P. 23(b)(3) against Econo-Car International, Inc. and Westinghouse Electric Corporation [1] with respect to alleged violations of the Sherman Act concerning the insurance tie-in and the fleet purchase price-fixing conspiracy [2] on behalf of a class comprising all individuals or entities that held Econo-Car rental car franchises on or after August 28, 1967 and during the period in suit. Counsel are directed to submit to this court within ten (10) days a proposed order certifying the class above described and are directed to submit as well (1) updated information on the size of the class, (2) an outline of a proposed method of compliance with the requirements of Fed.R.Civ.P. 23(c)(2) along with a proposed form of notice to be given to members of such class and (3) a specific delimitation of the time period encompassed in this suit.

Copies of all materials plaintiffs submit to the court in connection with this order shall be furnished to counsel for defendants Econo-Car International, Inc. and Westinghouse Electric Corporation, who may file objections and comments within five (5) days thereafter.

1. As to the so-called "New England defendants" (Distributor Auto Rentals, Inc., Franchise Realty Corp., Econo-Car Overseas, Inc., and Three Ninety Nine Auto Rental of Boston, Inc.), plaintiffs have failed to show that acts of these defendants gave rise to any of the common issues that support a nationwide class with regard to the alleged tie-in and conspiracy to fix prices. Therefore, as to such New England defendants, the claims shall not proceed on a class basis; plaintiffs who allege injury at the hands of these defendants, as distinct from injuries they assert against the franchisor, will, of course, be able to proceed with individual actions against such defendants should they elect to do so.

2. With regard to all other claims asserted in the complaint, plaintiffs have failed to satisfy the court that class certification is appropriate. As above, any plaintiff may pursue such claims on an individual basis.