CHASE PARKWAY GARAGE, INC.,
et al., Plaintiffs,

v.

SUBARU OF NEW ENGLAND, INC. and
Ernest Boch, Defendants.

Civ. A. No. 79–1889–MC.

United States District Court,
D. Massachusetts.

June 16, 1982.

Allan R. Rosenberg, Putnam, Bell & Russell, Boston, Mass., Ira H. Shinberg, Haverhill, Mass., for plaintiffs.

Robert W. Mahoney, Hale & Dorr, Harold E. Magnuson, Martin, Magnuson, McCarthy & Kenney, Boston, Mass., for defendants.

Edward B. Hanify, William L. Patton, Dwight W. Quayle, Ropes & Gray, Boston, Mass., Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Subaru.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

In this antitrust action, plaintiffs are seeking injunctive relief and damages for alleged violations by the defendants of Section 1 of the Sherman Act, 15 U.S.C. § 1. The plaintiffs also seek class certification in Counts I and III. Plaintiffs, franchised Subaru dealers in the six New England states, allege in Count I that Subaru of New England, Inc. (SNE) and Ernest Boch (Boch) have illegally tied the sale of SNE's transportation services (the tied product) to the sale of new Subarus (the tying product) to its dealers and that SNE has charged its dealers excessive amounts for freight services; Count II concerns certain advertising practices of SNE and Boch, but plaintiffs do not seek class certification on this count at this time. In Count III, for which plaintiffs do seek class certification, the plaintiffs allege that SNE and Boch have violated 15 U.S.C. § 1 by conspiring to effect the

illegal tying arrangement alleged in Count I.

■ The class for which plaintiffs seek certification is defined as "all persons and entities who or which are presently or who or which have been at any time during the period from September 19, 1975 and the present franchised Subaru dealers within the states of Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont". The plaintiffs bear the burden of demonstrating that all of the prerequisites of subsection (a) of Rule 23 are met and that the action falls within one of the categories set forth in subsection (b).

Whether or not the plaintiffs can meet the requirements of Rule 23(a) is immaterial since I find that this action does not meet the test of Rule 23(b)(3). That subsection provides that a class action may be maintained if Rule 23(a) is satisfied and if (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Since I find that each plaintiff will be required to present individual proof of coercion in order to establish the existence of an illegal tie, common questions will not predominate and the requirements of Rule 23(b)(3) will not be met by these plaintiffs.

\* \* \*

Plaintiffs argue that the issue in this case is whether the franchise agreement *as it was interpreted and enforced* by SNE required every dealer, as a condition of purchasing Subarus, to purchase SNE's delivery services. Proof of such will require, contrary to the plaintiffs' arguments, individual proof of coercion.

■ To establish a tying arrangement violative of § 1 of the Sherman Act, a plaintiff must prove (1) an agreement by a seller to sell one product on the condition that the buyer purchase a separate product, (2) that the seller has sufficient economic power in the market for the tying product to appreciably restrain competition in the market for the tied product, and (3) that a "not insubstantial" amount of interstate commerce is affected. *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Coercion is not among those elements which must be demonstrated; however, coercion may play a part in determining the existence of an illegal tie-in.

Courts have differed widely in their treatment of coercion in cases alleging illegal tying arrangements. Some have held that coercion is an element of proof in establishing an illegal tie-in. *See, e.g., Ogden Food Service Corp. v. Mitchell*, 614 F.2d 1001 (5th Cir. 1980). Others have held that coercion is not an element of an illegal tying arrangement. *See Bell v. Cherokee Aviation Corp.*, 660 F.2d 1123 (6th Cir. 1981). Still others have considered coercion relevant to the determination of whether a seller has conditioned the sale of one product upon the purchase of another. *See Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368 (5th Cir. 1977). Finally, some courts have held that coercion is relevant in determining dominance or economic power in the market for the tying product. *See Capital Temporaries, Inc. v. The Olsten Corp.*, 506 F.2d 658 (2d Cir. 1974).

I agree with the analysis of the Third Circuit in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977). In *Bogosian*, the Third Circuit held that proof of coercion on an individual basis was not required where a seller expressly conditioned the sale of one product upon the purchase of another.

The *Bogosian* court interpreted its earlier decision in *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211 (3d Cir. 1976), "to have required coercion to be proven only because in that case the conditioning of the sale of one product upon purchase of another was not reflected in the agreement or in the operation of its terms". 561 F.2d at 450.

The *Bogosian* analysis has been employed in this district by Judge Murray in *Rental Car of New Hampshire v. Westinghouse Electric Corp.*, 496 F.Supp. 373 (D.Mass. 1980). In that case plaintiffs, franchisees of the Econo-Car auto rental chain, alleged various violations of § 1 of the Sherman Act. Judge Murray certified a class as to one issue where the alleged tie-in was evident on the face of the agreement; however, he denied class certification as to another issue since the tie-in did not appear in the contract in express terms. He held that, "[e]vidence extrinsic to the contract will be required to prove coercion of the individual franchisees on a case-by-case basis. Where the issue of the alleged tie-in ... must rest on proof of individual cases, the commonality requirements of Rule 23 are not satisfied, and the claim does not justify class action treatment". 496 F.Supp. at 378.

Such is the case here. Plaintiffs argue that the tie-in of the Subarus and SNE's transportation services is contained in the terms of the various franchise agreements between SNE and each of its dealers. Section 12.2 of the Subaru Dealership Agreement (Ex. 4, Appendix of Defendants Subaru of New England, Inc. and Ernest Boch in Opposition to Class Action Certification) is typical of the provisions to which plaintiffs point to demonstrate the alleged tie-in. That section reads as follows:

> 12.2 PRICES. Distributor shall sell Subaru Products to Dealer at such prices and upon such terms as may be established from time to time by Distributor. Dealer shall pay any and all sales tax, use tax and other governmental or municipal charges, except Federal Excise Tax, imposed or levied or based upon the sale of Subaru Products by Distributor to Dealer. Dealer shall be responsible for and pay all expenses incurred after the Subaru Products have been released from Distributor's storage facility. Dealer's expenses shall include but not be limited to transportation, storage during transportation, and insurance, as well as the cost of arrangements connected with these expenses.

It is not evident from that provision of the agreement, when it is read alone or in conjunction with the rest of the agreement, that the dealers are required to purchase SNE's transportation services. Even if plaintiffs' contention that as defendants have enforced the terms of the agreement the dealers are required to purchase SNE's transportation services is true, the tie-in is not contained in the agreement in express terms. Individual proof of coercion, therefore, will be necessary to establish the existence of a tie-in. Because of the necessity for individual proof of coercion, common questions of fact do not predominate and class certification of Count I must be denied.

Plaintiffs' allegation in Count III is that the defendants conspired to effect the illegal tie-in alleged in Count I. Proof of the existence of a conspiracy does not relieve the plaintiffs of the burden of establishing the illegality of the tie-in which they allege in the complaint. Plaintiffs must do more than simply allege a conspiracy; they "must go further and satisfy the court that common questions of proof of the tying arrangement will predominate". *Rental Car of New Hampshire*, 496 F.Supp. at 380. Since plaintiffs have not done so, class certification must be denied as to Count III.

For the foregoing reasons, plaintiffs' motion for class certification is denied as to both Count I and Count III.